IN THE UNITED STATE DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JORDAN B. MELLINGER, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| vs. | : | No. 5:15-CV-01512 |
| | : | |
| STATE FARM MUTUAL AUTOMOBILE | : | ASSIGNED TO |
| INSURANCE COMPANY, | : | JUDGE EDWARD G. SMITH |
| Defendant | : | JURY TRIAL DEMANDED |

## PLAINTIFF'S AMENDED COMPLAINT

Plaintiff, Jordan B. Mellinger, by and through his undersigned counsel, Russell, Krafft & Gruber, LLP, hereby files the following Amended Complaint against Defendant in the above-captioned matter.

### JURISDICTION AND VENUE

1. Plaintiff, Jordan B. Mellinger, is an individual who resides at 5407 Rainbow Drive, East Petersburg, Pennsylvania 17520.

2. Defendant, State Farm Mutual Automobile Insurance Company, is currently and was at all times material licensed to conduct business in the Commonwealth of Pennsylvania, has and continues to conduct business in Lancaster County, Pennsylvania and maintains a principal place of business at 1 State Farm Plaza, Bloomington, Illinois 61710.

3. The amount in controversy exceeds the sum of Seventy Five Thousand ($75,000.00) exclusive of interest and costs.

4. Plaintiff filed a Complaint in this matter in the Court of Common Pleas of Lancaster County on February 23, 2015 which Defendant removed to this Court on March 24, 2015.

471627.5

5. This Honorable Court has jurisdiction pursuant to 28 U.S.C.A. § 1332 and §1367 in that the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and the parties have diversity of citizenship.

6. Venue is appropriate in this judicial district pursuant to 28 U.S.C.A. § 1391(a) in that a substantial part of the events or omissions that give rise to this Complaint occurred within this judicial district.

## STATEMENT OF CLAIM

7. At all times material hereto, Defendant acted in its corporate capacity by and through its duly authorized agents, servants, workmen and/or employees.

8. On or about October 23, 2009, Plaintiff was the restrained passenger in a motor vehicle driven by Jordan Deitz (hereinafter referred to as "Tortfeasor") when the Tortfeasor lost control of the vehicle and caused an accident in East Hempfield Township, Lancaster County, Pennsylvania, which resulted in serious injuries, damages and losses to Plaintiff, as more fully set forth herein.

9. As a result of the accident, Plaintiff suffered injuries which included but were not limited to a serious traumatic brain injury, lacerations to the face, nasal fractures and pulmonary contusions.

10. Plaintiff's most serious injury was a subarachnoid hemorrhage in the right and left frontal lobes and the left parietal lobe of the brain combined with small petechial hemorrhages throughout the brain.

11. Plaintiff's traumatic brain injury and brain bleed resulted in his hospitalization in a neurotrauma unit and rehabilitation hospital for 18 days, and lengthy inpatient and outpatient

occupational, speech/cognitive and physical therapies and extensive medications, including anti-seizure medication.

12. During his treatment and rehabilitation, Plaintiff suffered seizures, and exhibited uncharacteristic aggression, threatening his mother and caregivers, sexual aggression, poor awareness of safety, balance deficits, and significant personality and cognitive deficits, requiring continuous supervision and assistance.

13. Plaintiff, a high school sophomore at the time of the accident, was unable to attend school for almost one month, was unable to function at the same level shown prior to the accident and required academic accommodations to manage his schoolwork more effectively and independently.

14. As a result of his injuries, Plaintiff incurred medical bills, medication bills and suffered a loss of wages and benefits.

15. As a further result of his injuries, Plaintiff has undergone prolonged pain and suffering, loss of life's pleasures and great inconvenience, some or all of which may be permanent.

16. Plaintiff suffers from complex spoken and visual memory deficits, changed personality traits and increased irritability, and is at significantly greater risk to develop dementia, seizures and future cognitive difficulties as a result of the traumatic brain injury sustained in the October 23, 2009 accident.

17. Plaintiff initiated a claim against Tortfeasor that was settled for policy limits of $100,000.00 with the Tortfeasor's insurance carrier, also State Farm, in October 2011.

18. The Defendant consented to the foregoing settlement in advance of settlement.

19. The policy limit of Tortfeasor's insurance, and the $100,000 settlement, was inadequate to compensate Plaintiff for his injuries and damages, which arose from the use of an underinsured motor vehicle.

20. At the time of the accident on October 23, 2009, Plaintiff was insured under a contract of insurance issued by Defendant, Policy No. 723 1076-C15-38K ("Policy"), including coverage W, Underinsured Motor Vehicle Coverage (UIM), as set forth in the Declarations Page attached to and incorporated in Plaintiff's original Complaint as "Exhibit A".

21. At the time of the accident, the applicable policy of insurance included four (4) vehicles insured by Defendant, and accordingly, provides stacked policy limits aggregating to $400,000.00.

22. Defendant insured Tortfeasor as well as providing insurance to the Plaintiff.

23. Plaintiff through counsel by letter dated September 6, 2011 addressed to State Farm Claim Representative, Deborah Campbell and copied to Karl L. Stefan, Esquire of Forry Ullman, provided extensive medical and educational records to the Defendant, outlined Plaintiff's accident related injuries, treatment and effects therefrom, and explained why the policy limits of Tortfeasor's insurance policy were demanded, as well as additional damages through underinsured motorist coverage. A true and correct copy of the September 6, 2011 letter is attached hereto as Exhibit 1.

24. In the letter dated September 6, 2011, Plaintiff sought payment of the Tortfeasor's policy limits and additional damages through underinsured motorist coverage due to the extent of injuries, medical expenses and future pain and suffering.

25. Plaintiff's counsel continuously and repeatedly sought to resolve Plaintiff's UIM claim after the claim with Tortfeasor was settled, calling, emailing and writing to Defendant's counsel.

26. Plaintiff continued to provide to Defendant additional medical and school records and authorizations signed by Plaintiff on December 12, 2011, February 17, 2012, January 29, 2013, February 28, 2014, April 30, 2014 and May 15, 2014.

27. Counsel for Defendant deposed Plaintiff on November 3, 2011 and Plaintiff's mother, Dawn Mellinger, on March 6, 2012.

28. Pursuant to Defendant's request, on Monday, May 14, 2012, Plaintiff underwent an examination by otolaryngologist Karen A. Rizzo, M.D. with regard to the condition of his nose which had been injured in the 2009 accident.

29. On July 3, 2012, Counsel for Defendant provided Plaintiff's counsel with Dr. Rizzo's May 15, 2012 report.

30. After unsuccessful attempts to resolve the claim for UIM benefits, in March of 2013, Plaintiff chose to be evaluated by Robert B. Frazier, Ph.D., neuropsychologist regarding what, if any, deficits in personality and cognitive function might be related to the October 23, 2009 accident.

31. On February 26, 2014, Dr. Frazier provided his evaluation and report, stating that the reason for the delay of almost one year was solely caused by the serious illness of one of his family members, and was unrelated to the Plaintiff who was cooperative and forthcoming in all that he was asked to do.

32. Counsel for Plaintiff provided counsel for Defendant with a copy of Dr. Frazier's report on February 28, 2014.

33. The report indicated that Plaintiff suffers from complex spoken and visual memory deficits, changed personality traits and increased irritability, and is at significantly greater risk to develop dementia, seizures and future cognitive difficulties as a result of the traumatic brain injury sustained in the October 23, 2009 accident.

34. No response was received from Defendant until April 22, 2014 when additional documents and information were requested.

35. Plaintiff provided all information requested to counsel for Defendant on April 30, 2014 and May 15, 2014.

36. Nothing further was heard from Defendant until July 10, 2014 at which time Defendant's counsel stated that Defendant would make no offer of underinsured motorist coverage because it "does not believe that Mr. Mellinger's claim exceeds the third-party liability coverage available to the Tortfeasor."

37. Claims representative, Jerry Elitz, corresponded with Plaintiff's counsel in December of 2014 and ultimately advised Plaintiff that State Farm would make no offer because Plaintiff's claim had no value beyond the $100,000 per-person liability limits of the Tortfeasor.

38. In March of 2012, after counsel for Defendant had forwarded the Declaration Page, Policy and Important Notice and Limited Tort Election for State Farm Policy No. 723-1076-C15-38K, that was in effect for the policy period May 30, 2007 through September 15, 2007, Plaintiff requested Defendant to provide the same documents in effect on the date of the loss, October 23, 2009.

39. Counsel for Defendant confirmed by letter dated March 28, 2012 that the 2007 Policy he provided to Plaintiff's counsel on February 29, 2012 was in force on the date of the October 23, 2009 accident.

40. The 2007 policy furnished by Defendant's counsel provided that disputes with regard to UIM coverage would be decided by arbitration.

41. It was only after Plaintiff's counsel called and emailed Defendant to demand arbitration and sought to determine which arbitrator would be selected by Defendant, that counsel for Defendant on October 24, 2014 indicated that the policy booklet previously forwarded to Plaintiff was incorrect and had been replaced by a different policy form and booklet which had not been previously provided.

42. The policy furnished by counsel on October 24, 2014 directed the filing of a civil action and not an arbitration proceeding for resolving a disputed UIM claim.

## COUNT I

### UNDERINSURED MOTORIST BENEFITS/BREACH OF CONTRACT

43. Paragraphs 1 through 42 above are incorporated herein by reference.

44. Defendant breached the Policy and owes underinsured motorist benefits to Plaintiff.

45. Plaintiff suffered damages in excess of his stacked underinsured motorist benefits, specifically Four Hundred Thousand Dollars ($400,000.00).

WHEREFORE, Plaintiff, Jordan Mellinger, demands that judgment be entered in his favor against Defendant, State Farm Mutual Automobile Insurance Company, for damages in an

amount in excess of Four Hundred Thousand Dollars ($400,000.00) with interest as allowed by law and such other and further relief as the Court deems just and proper.

## COUNT II

## BAD FAITH

46. Paragraphs 1 through 45 are incorporated herein by reference.

47. Pennsylvania law prohibits insurers from engaging in bad faith conduct toward their insureds in actions under policies by authorizing insureds to recover punitive damages and court costs and attorney fees when such bad faith conduct occurs, 42 Pa.C.S.A. § 8371.

48. Plaintiff believes, and therefore avers, that Defendant committed bad faith in its handling of Plaintiff's claim for underinsured motorist benefits pursuant to 42 Pa.C.S.A. § 8371 and/or the common law of the Commonwealth of Pennsylvania, as follows:

    A. Failing to honestly and objectively consider Plaintiff's demand for underinsured motorist benefits;

    B. Failing to timely correspond or respond to Plaintiff's counsel's demands regarding Plaintiff's claim for underinsured motorist benefits;

    C. Failing to tender any amount of the underinsured motorist coverage;

    D. Refusing to negotiate in good faith with the Plaintiff and/or his counsel regarding his claim for underinsured motorist benefits;

    E. Failing to objectively consider the documentary evidence and expert report provided to it by Plaintiff's counsel;

F. Failing to timely and/or expeditiously investigate Plaintiff's claims or to have Plaintiff examined by an expert with respect to his traumatic brain injury and long term losses and effects;

G. Placing its financial interest ahead of the interests of its insured;

H. Providing counsel for the Plaintiff with the incorrect policy of insurance with erroneous provisions pertaining to remedy and arbitration, representing that it was the applicable policy, only to state two and one half years later that another policy booklet with contradictory provisions applied;

I. Breaching the provisions of the Policy and/or the fiduciary duties owed to its insured;

J. Ignoring repeated requests by Plaintiff's counsel to attempt to settle the underinsured motorist claims being asserted by Plaintiff and/or tender said limits;

K. Failing to tender to Plaintiff any amount under the policy's underinsured motorist coverage or even make an offer of payment of what it believed to be the fair and reasonable value of Plaintiff's claims when it possessed the duty and/or obligation to do so and/or it was apparent that Plaintiff was entitled to the same;

L. Failing to timely inform Plaintiff of its evaluation of his claim for underinsured motorist benefits;

M. Failing to acknowledge and/or act promptly upon written or oral communications with respect to claims arising pursuant to the Policy, in violation of 40 P.S. § 1171.5(A)(10)(ii);

   N. Refusing to pay Plaintiff's claim for underinsured motorist benefits without conducting a reasonable investigation based upon all available information, in violation of 40 P.S. § 1171.5(A)(10)(iv);

   O. Not attempting in good faith to effectuate prompt, fair and equitable settlement of Plaintiff's claim for underinsured motorist benefits pursuant to the Policy even though it had become reasonably clear that Plaintiff was entitled to the same, in violation of 40 P.S. § 1171.5(A)(10)(vi);

   P. Compelling Plaintiff to institute litigation to recover amounts due to him under the Policy, in violation of 40 P.S. § 1171.5(A)(10)(vii); and

   Q. In otherwise engaging in bad faith under the circumstances.

  49. The refusal of Defendant to tender the underinsured motorist coverage limits of the Policy, or even make an offer of payment of what it believed to be the fair and reasonable value of Plaintiff's claim, in light of Plaintiff's counsel's correspondence and records referenced herein, was not reasonable, objective, honest or in keeping with Defendant's fiduciary duties and/or obligations owed to Plaintiff.

  50. Defendant's conduct, including, but not limited to, its bad faith refusal to negotiate in good faith and/or fairly evaluate Plaintiff's claims for underinsured motorist benefits, was intentional, reckless and wanton.

  51. As a result of Defendant's bad faith conduct, Plaintiff has suffered damages in an amount equal to or in excess of the limits of all available coverage, together with punitive damages, interest, costs and attorney fees.

WHEREFORE, Plaintiff, Jordan Mellinger, demands that judgment be entered in his favor against Defendant, State Farm Mutual Automobile Insurance Company, in an amount in excess of Four Hundred Thousand Dollars ($400,000.00) with interest, punitive damages, attorney fees and costs of suit, and such other and further relief as the Court deems just and proper.

Respectfully submitted,

RUSSELL, KRAFFT & GRUBER, LLP

By: _____
Christina L. Hausner
Attorney I.D. # 32373
Attorneys for Plaintiff
Hempfield Center, Suite 300
930 Red Rose Court
Lancaster, PA 17601
(717) 293-9293
clh@rkglaw.com